# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN BREWINGTON, | ) Case No. CV 13-07672-DMG (CWx) |
| Plaintiff, | ) **FINDINGS OF FACT AND** |
| v. | ) **CONCLUSIONS OF LAW** |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

This matter is before the Court following a bench trial which took place on June 30, 2015 through July 2, 2015.  John F. DeNove, Diane M. Corwin, and Alicia S. Curran appeared on behalf of Plaintiff Stephan Brewington.  Garrett Coyle and Julie Zatz appeared on behalf of Defendant United States of America.

Having carefully reviewed the evidence and the arguments of counsel, as presented at trial and in their written submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

# I.

## FINDINGS OF FACT

On August 12, 2011, Stephan Brewington went to the Department of Veteran Affairs Greater Los Angeles hospital (the "VA") for treatment of a branch retinal vein occlusion that affected the vision in his left eye.   The prescribed treatment was an injection into his left eye of Avastin, a drug used to treat conditions like macular edema. (Final PreTrial Conference Order ("PTO") 5a, b [Doc. # 45].)   Instead of injecting Avastin, the VA injected Mr. Brewington's left eye with Velcade, a chemotherapy drug, causing irreversible blindness in Mr. Brewington's left eye.   (PTO 5c, d.)   There was no evidence presented as to any approved or medically indicated intraocular use of Velcade. To the contrary, whether directly or indirectly, Velcade caused serious injury to Mr. Brewington, including blindness in the left eye, mild chemical meningitis, left hemisensory deficits, chronic daily headache of a migrainous nature, rebound headaches, neuropathic orbital pain syndrome, depression, and anxiety.   (Trial Declaration of H. Ronald Fisk, M.D. ("Fisk Decl.") ¶ 8 [Doc. # 56]; Trial Declaration of Raghu C. Murthy, M.D. ("Murthy Decl.") ¶¶ 14-15 [Doc. # 50].)

Mr. Brewington maintains 20/20 vision in his right eye.  (PTO 5g.)  At the time of the Velcade injection, Mr. Brewington was 42 years of age.  (PTO 5h.)

The Velcade injection initially caused significant ocular inflammation in Mr. Brewington's left eye.  Ocular inflammation can cause pain in the inflamed area as well as around the eye.   This inflammation triggered Mr. Brewington's orbital pain and migraine-type headache.  (Trial Declaration of Pradeep Prasad, M.D. ("Prasad Decl.") ¶ 8 [Doc. # 53].)  By at least March 12, 2013, however, the ocular inflammation was fully resolved.  (Prasad Decl. ¶ 8; Defendant's Exhibit 101 at 724-25.)  The results of an October 14, 2011 MRI of Mr. Brewington's left orbit showed resolution of the globe enhancement, no abnormal orbital enhancement, normal appearance of the optic nerve,

and resolution of prior swelling of the soft tissues of the eyelid.   (Prasad Decl. ¶ 9; Defendant's Exhibit 101 at 44.)   These results, as well as Dr. Prasad's examination of Mr. Brewington's left eye, confirmed the absence of objective signs of orbital inflammation. (Prasad Decl. ¶ 9.)   Thus, a little after a month following the Velcade injection, signs of the inflammation associated with the injection had abated.   (*Id.*)   Nonetheless, Mr. Brewington reported that he continued to experience pain around his left eye radiating to the back of his head.   (*Id.*)

A.    **Treatment Since the Injury**

Since the injection, Mr. Brewington has continued to receive treatment at the VA. (PTO 5e.)   He has seen medical providers in a variety of specialties, including neurology, ophthalmology, pain management, and psychiatry.   (*See* Defendant's Exhibit 101.)   Mr. Brewington has also been prescribed increasing doses of opiates, such as Methadone, Dilaudid, Fentanyl, and OxyContin, to address his complaints of pain.   He has also been taking anti-inflammatory medication and anti-anxiety medication.   (*See id.*)

Mr. Brewington was offered but declined the opportunity to participate in the Comprehensive Pain Management and Rehabilitation Programs at the VA hospital. (Trial Testimony of Quynh Pham and Hyung Kim; Defendant's Exhibit 101 at 834 (note in record stated "discussed comprehensive pain and rehab program, but patient declined at this time").)   He also turned down the VA's offer to attend a non-VA pain management program of his choice, which the VA would subsidize.   (*Id.*; Defendant's Exhibit 101 at 740-42 ("Pt was once again reminded that he has been approved by the administration to seek outside expertise for the management of his pain."); 746 ("Pt has been approved by the VA Administration to seek outside pain providers, should he wishes [sic] to seek this option.   Pt has previously declined this option because he feels that, this being a VA-initiated issue, he would like the VA to address his concerns."); 759 ("Of note, pt has been approved by the VA Administration to seek outside pain providers, and this option

was presented to the patient as well, especially given the time associated with his travel from his residence in Pasadena to WLA.").)

**B.     Medical Conditions**

1.     *Pain*

The parties' experts disagree as to whether Mr. Brewington suffers from Central Pain Syndrome, which is an irreversible condition, or from Centralized or Centralization of Pain syndrome, which may potentially be reversed with proper care and treatment. (Trial Declaration of Laura Audell ("Audell Decl.") ¶ 14; Fisk Decl. ¶ 17e.)  The Court cannot determine by a preponderance of the evidence which of these syndromes actually applies to Mr. Brewington.  What the experts *can* agree upon, and which the Court does find, is that Mr. Brewington suffers from chronic pain, resulting from the Velcade injection.  Without applying any labels to it, the experts appear to agree that due to neuroplasticity, the severity or persistence of pain alters the central nervous system pathways of pain processing, increasing the number and excitability of the nociceptors that allow pain signals to travel through the sensory nerve fibers. (Audell Decl. ¶ 14; Fisk Decl. ¶¶ 13-14.)   Generally, once these changes occur, a person may experience hyperalgesia, an increased response to a normally painful stimulus, and allodynia, a pain response to a stimulus that does not normally produce pain.  (*Id.* ¶ 15.)

According to the National Institute of Neurological Disorders and Stroke, Central Pain Syndrome is distinct:  it is a "neurological condition caused by physical damage to or dysfunction of the central nervous system (CNS)," which is typically the result of "stroke, multiple sclerosis, tumors, epilepsy, brain or spinal cord trauma, or Parkinson's Disease. . . ."  (Audell Decl. ¶ 22.)

Although Mr. Brewington posits that he has Central Pain Syndrome, there is little support in the record that Mr. Brewington suffers from that condition as it has been defined by the National Institute of Neurological Disorders and Stroke.   First, Mr.

Brewington has not experienced any of the typical causes of the syndrome, such as stroke, multiple sclerosis, tumors, epilepsy, brain or spinal cord trauma, or Parkinson's Disease.  (*See* Defendant's Exhibit 101.)  Moreover, two MRIs of Mr. Brewington's brain have not revealed any evidence of physical damage to the central nervous system. (Trial Declaration of Edwin Amos, M.D. ("Amos Decl.") ¶ 17 [Doc. # 65].)

Defendant, on the other hand, asserts that Mr. Brewington has Opioid-Induced Hyperalgesia ("OIH"), which Defendant argues is also closely associated with altered central pain processing.  OIH is a condition caused by exposure to opioids whereby a patient receiving opioids for the treatment of pain paradoxically becomes more sensitive to painful stimuli.  (Fisk Decl. ¶ 19; Plaintiff's Exhibit 22 ("A Comprehensive Review of Opioid-Induced Hyperalgesia").)

The evidence does not establish that Mr. Brewington has OIH.  One of the hallmarks of OIH is the worsening of pain at the original site or the appearance of distant and more diffuse pain throughout the body.  (*Id.*)  First, with respect to worsening pain, the record does not reflect definitive instances where Mr. Brewington's pain increased after taking opioids or decreased after ceasing to use opioids, which would be consistent with OIH.  Instead, Mr. Brewington has generally experienced some relief after taking opioids.  (*See, e.g.*, Fisk Decl. ¶ 6(13), (15), (16), (20), (30), (31) (summary of notes in medical record); ¶ 19.)

Second, with respect to distant or diffuse pain, Mr. Brewington has reported pain in areas as disparate as his left leg and buttock and thigh areas.  (*See* Fisk Decl. ¶ 6(28) (summary of September 26, 2012 note in medical record).)  The parties disagree as to whether pain in these areas constitutes "diffuse" pain.  Plaintiff asserts that diffuse pain would be distributed more evenly across the body and would radiate outward from a location on the body.  Defendant, on the other hand, argues that discrete pockets of pain, so long as they are located other than in the left eye, indicate diffuse pain.  The Court

declines to resolve this issue in light of the conflicting medical testimony presented at trial.

Although there are instances in Mr. Brewington's medical record where OIH is mentioned as a possible concern, he was never diagnosed with OIH.  (Defendant's Exhibit 101 at 44, 357, 362, 577, 702, 745, 759.)  Nor did Mr. Brewington's doctors at the VA prescribe treatment—namely, cessation of opioid use—that would be appropriate for an OIH diagnosis.  Instead, the VA continued to prescribe opioids at ever-increasing dosages to Mr. Brewington.  (*See* Defendant's Exhibit 101.)

In short, it has not been shown by a preponderance of the evidence in the record that Mr. Brewington has OIH.

Although the Court cannot find by a preponderance of the evidence that Mr. Brewington has Central Pain Syndrome, Centralization of Pain Syndrome, or OIH, the record is clear that Mr. Brewington has chronic pain resulting from the Velcade injection. As a result of the chronic pain, Mr. Brewington has taken increasing dosages of opioids and, in the process, developed opioid tolerance.  (*See* Fisk Decl. ¶ 6(32) ("Mr. Brewington is thinking about going off meds for a while as he believes he is developing a tolerance to it – in the past, this seems to have worked for him.").)  A person with opioid tolerance requires more opioids to achieve the same pain-dampening effect.  Moreover, Mr. Brewington's prolonged opioid use has exacerbated other problems, such as hypogonadism and sleep apnea.  (*See* Fisk Decl. ¶ 6(28) (medical record noted secondary hypogonadism from pain medication use); (30) (note in medical record indicated concerns with prolonged regimen of high dose opioids on Mr. Brewington's endocrine function, immune system function, and central sleep apnea).)

2.    *Medication Overuse / Rebound Headaches*

Mr. Brewington has Medication Overuse Headaches ("MOH").  The International Classification of Headache Disorders (3rd edition) has defined MOH as a chronic

headache disorder in which the headache occurs for more than three months on 15 or more days per month due to regular overuse of medication.  Medications most implicated in MOH include opioids such as methadone and dilaudid, triptans, combination analgesics, and anti-inflammatories.  (Audell Decl. ¶ 16.)

       3.     *Depression and Anxiety*

Mr. Brewington has depression and anxiety, which were caused by the Velcade injection.  Both can worsen pain.  (Fisk Decl. ¶ 25i, j.)  Although the Court does not find that Mr. Brewington has OIH, his increasing tolerance to opioids has heightened his use of opioids.  The prolonged use of opioids has affected his wellness in other areas, such as his libido and ability to sleep, deepening his depression and anxiety.  This in turn has negatively impacted his experience of pain, propelling him to seek higher dosages of opioids to address the pain.

       4.     *Cognitive Dysfunction*

Absent a structural brain problem or chemical meningitis, neither of which Mr. Brewington demonstrated he has, Mr. Brewington's cognitive dysfunction is likely due to incompletely treated depression and narcotic medication side effects.  (Amos Decl. ¶¶ 17, 24.)  Any cognitive dysfunction is thus not directly attributable to the Velcade injection and is potentially remediable.  (Amos Decl. ¶ 21.)

       5.     *Summary Prognosis*

Mr. Brewington suffered an injury to his left eye caused by an injection of Velcade, which caused inflammation to the orbit of the eye and the optic nerve, acute pain, and irreversible blindness in that eye.  Although the orbital inflammation has subsided, the severity or duration of the acute pain Mr. Brewington experienced changed the central nervous system pathways that process painful stimuli.  Mr. Brewington now experiences chronic pain.  Because of his complaints of chronic pain, Mr. Brewington was prescribed opioids at increasing dosages, eventually developing opioid tolerance.

Nothing is preventing Mr. Brewington, however, from participating in a comprehensive pain management and rehabilitation program.  (Fisk Decl. ¶ 16.)

The Velcade injection also led to depression and anxiety, for which he also takes medication.  He has been or is prescribed medication for other conditions, such as sleep apnea, low testosterone, and hypertension.  As a result of his heavy use of medication, Mr. Brewington experiences Medication Overuse Headaches.  Mr. Brewington also exhibits mild cognitive dysfunction, but it is not directly attributable to the injection.

Mr. Brewington has retained normal sight in his right eye.  Furthermore, he does not have deep vein thrombosis, significant cardiac disease, endocrine disease (except low testosterone), urologic disease (except low libido), or gastrointestinal disease.  (*See* Defendant's Exhibit 101.)  Mr. Brewington also drives an unmodified car, albeit on a limited basis.  (PTO ¶ 6b.)

Mr. Brewington's life expectancy as an African American 46.4-year-old male is 28.61 years.  (Declaration of Jerald Udinsky ("Udinsky Decl.") ¶ 12.)

In light of the factual findings above, the Court concludes that, even were he to learn to manage his pain without heavy dependence on opioid medication, Mr. Brewington will not be able to return to work because of his chronic pain, depression, and anxiety, which were caused by the injection.  Given the nature and range of Mr. Brewington's ailments, the prognosis for his recovery to the point where he can regain his ability to work is poor.

## C. **Award of Damages**

### 1. *Future Health Care and Life Plan Needs*

Mr. Brewington has incurred no medical expenses up to the point of trial because all of his care has been provided and paid for by the VA.  (PTO 5e, f.)  With respect to future medical benefits, should Mr. Brewington choose not to continue receiving medical care at the VA, the Affordable Care Act ("ACA") ensures that Mr. Brewington will have

access to insurance covering his future medical care needs as a result of the Velcade injection.  (Pub.L. No. 111, 148, 124 Stat. 119 (Mar. 23, 2010).)  Mr. Brewington has access to health insurance plans on California's health benefit exchanges.  (*See* California Health Benefit Exchange, http://hbex.coveredca.com/ (last visited July 16, 2015).)

Based upon the Court's factual findings, described *supra*, a review of the relevant health care services provided for in the parties' respective life care plans, and Mr. Brewington's access to ACA coverage, the Court finds by a preponderance of the evidence that $725,147.25 is a reasonable amount to award Mr. Brewington for his future health care expenses.

### 2.   *Back and Front Pay*

For 10 months prior to the Velcade injection, Mr. Brewington had not been employed as a production scheduler.  (PTO ¶ 6a.)  Based upon his earning history and the published wage data for production schedulers in Los Angeles County, Mr. Brewington's earning capacity in the last year that he worked prior to his injury as a contract production scheduler was about $42,000 per year.  (Declaration of Roger Thrush, Ph.D. ("Thrush Decl.") ¶ 6 [Doc. # 62].)  Given Mr. Brewington's lack of any documented earning history as a personal trainer and the absence of any reliable data on wages of self-employed personal trainers, it is too speculative to conclude what Mr. Brewington would have earned had he become a self-employed part-time personal trainer.  (*Id.*)

As of June 30, 2015, the present cash value of Mr. Brewington's past and future lost earnings as a result of the Velcade injection is $632,536.

### 3.   *Pain and Suffering Damages*

Based on the totality of the circumstances, and having considered the evidence and all of the relevant factors, the Court finds that $250,000 is reasonable compensation for Mr. Brewington's past and future pain and suffering.

///

## II.

## CONCLUSIONS OF LAW

**A.    California Law Applies Under the Federal Tort Claims Act**

In an action brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, the law of the place where the allegedly negligent act or omission occurred governs the substantive law applied.  28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 9, 82 S. Ct. 585, 591, 7 L. Ed. 2d 492 (1962).  To have a cognizable claim, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his employment under circumstances where the United States, if it were a private individual, would be liable under the law of the state where the claim arose.  28 U.S.C. § 1346(b)(1); *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1300, 188 L. Ed. 2d 303 (2014). California law is applicable because the accident occurred in California.

**B.    Plaintiff Must Prove His Claimed Damages Were Caused by the United States' Acts**

In California, plaintiffs must prove by a preponderance of the evidence that their claimed damages were caused by the negligent acts or omissions of an employee of the United States.  *See* 28 U.S.C. § 2674; Cal. Evid. Code § 115.  Defendant admits liability for injecting Velcade into Mr. Brewington's left eye, causing irreversible blindness. Therefore, the only element of his negligence claim is the resulting loss or damage.  *See Johnson v. Super. Ct.*, 143 Cal. App. 4th 297, 305 (2006).

**C.    Plaintiff's Recovery**

1.    *Economic Damages:  Future Medical Expenses*

To recover damages for future medical expenses, Mr. Brewington must prove by a preponderance of the evidence:  (1) the reasonable value of each of the expected future medical expenses; (2) that the future medical care, services, and supplies are reasonably certain to be needed and given in treatment of the injury; and (3) that the condition

1    requiring the future medical care is causally connected to the injuries inflicted by the

2    United States. *Dimmick v. Alvarez*, 196 Cal. App. 2d 211, 216, 16 Cal. Rptr. 308 (1961).

3    Future medical expenses may not be awarded if they are deemed speculative. *See*

4    *Scognamillo v. Herrick*, 106 Cal. App. 4th 1139, 1150-51, 131 Cal. Rptr. 2d 393 (2003).

5        Defendant asserts an affirmative defense of offset for collateral sources under

6    California's Medical Injury Compensation Reform Act of 1975 ("MICRA").    In

7    particular, Defendant seeks to introduce evidence of Affordable Care Act coverage as a

8    collateral source of future medical care expenses.    Under Section 3333.1(a) of the

9    California Civil Code, medical malpractice defendants may introduce evidence of "any

10   amount payable as a benefit to the plaintiff as a result of the personal injury" under "any

11   health, sickness or income-disability insurance, accident insurance that provides health

12   benefits or income-disability coverage, and any contract or agreement of any group,

13   organization, partnership, or corporation to provide, pay for, or reimburse the cost of

14   medical, hospital, dental, or other health care services."    Cal. Civ. Code § 3333.1(a).

15   "[S]ection 3333.1 does not preclude recovery of such damages, but rather, it allows the

16   trier of fact to decide how to apply the evidence in calculation of damages." *S.H. ex rel.*

17   *Holt v. United States*, No. 2:11-CV-01963-MCE, 2014 WL 5501005, at *3 (E.D. Cal.

18   Oct. 30, 2014) (quoting *Hernandez v. Cal. Hosp. Med. Ctr.*, 78 Cal. App. 4th 498, 506,

19   93 Cal. Rptr. 2d 97 (2000)) (internal quotation marks and brackets omitted).

20       Although the Ninth Circuit determined in *Taylor v. United States*, 821 F.2d 1428,

21   1431-32 (9th Cir. 1987), that Section 3333.2 applies to FTCA actions, it has not explicitly

22   held yet that Section 3333.1(a) applies to an FTCA action. *S.H.*, 2014 WL 5501005, at

23   *4. Nor has it decided whether Section 3333.1(a) allows introduction of future collateral

24   source benefits.    Other district courts have taken future insurance benefits into

25   consideration. *See Silong v. United States*, 2007 WL 2580543, at *13-18 (E.D. Cal. Sept.

26   5, 2007) (finding that Section 3333.1 allows the trier of fact to determine how to apply

27   future insurance benefits to damages calculation.); *Leung v. Verdugo Hills Hosp.*, 2013

28   WL 221654, at *4 (Jan. 22, 2013) (assuming without deciding that "the statute permits a

defendant to introduce evidence of future insurance benefits that the plaintiff is reasonably certain to receive"). Thus, this Court finds it appropriate to take insurance benefits available under the ACA into consideration in calculating reasonable future life care plan needs.

### 2. *Economic Damages: Lost Earnings*

To recover damages for lost earnings, Mr. Brewington must prove by a preponderance of the evidence the reasonable amount of the earnings lost on account of his injuries from the injection. CACI No. 3903C (Sept. 2003). To recover damages for future loss of earnings or earning capacity, Mr. Brewington must prove by a preponderance of the evidence the following: (1) the reasonable amount of the expected future income, earnings, salary, or wages; (2) that Mr. Brewington is reasonably certain to lose such future income, earnings, salary, or wages; and (3) that the future lost income, earnings, salary, or wages is causally connected to the injuries inflicted by the United States. CACI No. 3903C (Sept. 2003).

### 3. *Noneconomic Damages: Pain and Suffering*

There is no fixed standard to calculate the amount a plaintiff is entitled to for pain and suffering. Any damages awarded for pain and suffering, however, must be reasonable and based on the evidence and factfinder's common sense. CACI No. 3905A (Dec. 2009). In addition, any award of pain and suffering damages must be causally connected to the tortious act. *Miller v. San Diego Gas & Elec. Co.*, 212 Cal. App. 2d 555, 558, 28 Cal. Rptr. 126 (1963).

MICRA caps a plaintiff's recovery of noneconomic damages for pain and suffering at $250,000. Cal. Civ. Code § 3333.2b; *Taylor*, 821 F.2d at 1431-32 (MICRA applies to medical malpractice cases brought under the FTCA).

### 4. *The Duty to Mitigate*

The above findings of fact were made in recognition of California law, which has long required plaintiffs to "take reasonable steps to mitigate [their] damages" and bars "recover[y] for any losses which could have been thus avoided." *Shaffer v. Debbas*, 17

-12-

Cal. App. 4th 33, 41, 21 Cal. Rptr. 2d 110 (1993).  Mr. Brewington's future medical expenses and pain and suffering damages have been caused at least in part by his failure to mitigate damages by accepting the VA's repeated offers of a comprehensive pain management and rehabilitation program.  Although its conclusion is tempered by the fact that successful completion of such a program depends in large part on an individual's motivation to reduce opioid dependence and manage one's pain using alternative techniques, the Court concludes that Mr. Brewington could have avoided some of his future medical expenses and pain and suffering (both as a direct result of the injection and as a side effect of his medication use) by agreeing to attend a comprehensive pain management and rehabilitation program whether at the VA or elsewhere.  Accordingly, the Court took Plaintiff's failure to mitigate into account in calculating damages.

     5.   *Attorney's Fees*

Attorney's fees are limited to a maximum of 25% of any recovery.  28 U.S.C. § 2678.

## III.

## CONCLUSION

In light of the foregoing, the Court awards Plaintiff Stephan Brewington $725,147.25 in future medical expenses; $632,536 in past and future lost earnings; and $250,000 in noneconomic damages.  Plaintiff's counsel may submit a motion for reasonable attorney's fees within 30 days from the date of this Order.

DATED:  July 24, 2015

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE